## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

SHAWN GREEN,

        Appellant,

     v.

DEPARTMENT OF VETERANS
   AFFAIRS,

        Agency.

DOCKET NUMBER
CH-0731-17-0459-I-1

DATE:  January 3, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Shawn Green</u>, Chicago, Illinois, pro se.

<u>Sheila Fitzpatrick</u>, Hines, Illinois, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

### FINAL ORDER

The agency has filed a petition for review and the appellant has filed a cross petition for review of the initial decision, which reversed the agency's suitability action.  For the reasons discussed below, we GRANT the petition for review, REVERSE the initial decision, and DENY the cross petition for review. The agency's suitability action is SUSTAINED.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

**BACKGROUND**

On April 28, 2017, the appellant filed an application with the agency for the competitive service position of GS-5 Medical Instrument Technician. Initial Appeal File (IAF), Tab 8 at 20, 131-49. On his Declaration for Federal Employment, the appellant indicated a significant arrest history. *Id*. at 135-38. On May 1, 2017, the Office of Personnel Management (OPM) conducted a background investigation on the appellant and transmitted the results of that investigation to the agency. *Id*. at 102-30. Based on this information, the agency conducted a suitability review under its delegated authority. *Id*. at 100-01, 158. On May 9, 2017, the agency notified the appellant that the results of the review revealed 17 incidents of "criminal or dishonest conduct" between January 19, 2003 and June 2, 2016, which raised a serious question concerning his suitability for Federal employment. *Id*. at 78, 100-01. The agency afforded the appellant an opportunity to provide further pertinent information, including explanations of the 17 arrest incidents at issue. *Id*. at 79-99. After the appellant responded, *id*. at 38-77, on July 14, 2017, the agency issued a final suitability determination finding the appellant unsuitable for employment as a Medical Instrument Technician and cancelling any eligibilities he had for covered positions. *Id*. at 30-37.

The appellant filed a Board appeal, challenging the merits of the suitability action and raising an affirmative defense of disability discrimination. IAF, Tab 1, Tab 26 at 1-3. After a hearing, the administrative judge issued an initial decision reversing the suitability action. IAF, Tab 32, Initial Decision (ID). She found that the agency proved only eight of the 17 specifications of criminal conduct, and that it failed to establish a nexus between the remaining specifications and the integrity or efficiency of the service. ID at 4-20. The administrative judge also found that the appellant failed to prove his disability discrimination claim. ID at 21-25. She ordered the agency to cancel the

appellant's negative suitability determination, return him to all appropriate eligibility lists, and provide him with interim relief in the event that either party petitioned for review. ID at 26-27.

The agency has filed a petition for review, arguing that the administrative judge misapplied the burden of proof and made several erroneous findings of fact in concluding that it failed to establish nexus. Petition for Review (PFR) File, Tab 1. The appellant has filed a response, as well as a cross petition for review, arguing that the administrative judge erred in finding that he failed to prove disability discrimination. PFR File, Tab 8. He also challenges the agency's compliance with the interim relief order. PFR File, Tab 3. The agency has filed a reply to the appellant's response. PFR File, Tab 9.

**ANALYSIS**

The agency has provided acceptable evidence of its compliance with the interim relief order.

When, as here, the appellant was the prevailing party in the initial decision and interim relief was ordered, a petition for review filed by the agency must be accompanied by a certification that the agency has complied with the interim relief order, either by providing the interim relief ordered, or by making a determination that returning the appellant to the place of employment would cause undue disruption to the work environment. *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 6 (2015); 5 C.F.R. § 1201.116(a); *see* 5 U.S.C. § 7701(b)(2)(A)(ii). An agency's failure to comply with these requirements may, at the Board's discretion, result in the dismissal of its petition for review. *Guillebeau v. Department of the Navy*, 362 F.3d 1329, 1332-33 (Fed. Cir. 2004); 5 C.F.R. § 1201.116(e).

In this case, the agency's petition for review includes a copy of a letter to the appellant from the Chief of its Suitability Section indicating that the agency has reinstated his eligibilities in compliance with the administrative judge's

interim relief order. PFR File, Tab 1 at 12. The appellant challenges the agency's certification of compliance, arguing that the Suitability Chief has not returned his telephone call to discuss the details of the interim relief, and that, based on the initial decision and its ordering language, he believes that the agency is not in compliance with the interim relief order.[1] PFR File, Tab 3 at 4-5. In reply, the agency asserts that the Suitability Chief's letter is sufficient to demonstrate compliance. PFR File, Tab 9 at 4.

When an appellant challenges an agency's compliance with an interim relief order, 5 C.F.R. § 1201.116(b) provides a mechanism for the Board to order the agency to submit evidence of compliance. We find it unnecessary to do so in this case because we find no reason to doubt that the agency provided interim relief as stated in the Suitability Chief's letter. PFR File, Tab 1 at 12. We disagree with the appellant that the language in the initial decision casts any doubt on the compliance efforts that the agency undertook after the initial decision was issued. PFR File, Tab 3 at 5. Nor has the appellant presented any other evidence or allegation that would provide a concrete basis for us to question the agency's certification of compliance. Thus, an order to submit evidence of compliance under 5 C.F.R. § 1201.116(b) would serve no purpose because the agency has already submitted sufficient evidence of compliance with its petition for review.

The agency proved that the appellant committed criminal conduct that may have an impact on the integrity or efficiency of the service.

In a suitability appeal, the agency must prove by preponderant evidence that the appellant's conduct or character may have an impact on the integrity or efficiency of the service, based on one of the specific factors listed in 5 C.F.R.

---

[1] The appellant styles his challenge a "Petition for Enforcement of Interim Relief." PFR File, Tab 3 at 4. Because the Board's regulations do not provide for such a pleading, we have considered it as a challenge to the agency's certification of compliance under 5 C.F.R. § 1201.116(b). *See Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶ 20 (2016).

§ 731.202(b).  *Hudlin v. Office of Personnel Management*, 119 M.S.P.R. 61, ¶ 9 (2012); *see* 5 C.F.R. §§ 731.101(a), 731.202(a), 731.501(b).  "Criminal or dishonest conduct" may serve as a basis for a negative suitability determination. 5 C.F.R. § 731.202(b)(2).  The Board has jurisdiction to review all aspects of a suitability action, including whether the charged conduct renders an individual unsuitable for the position in question.  *Folio v. Department of Homeland Security*, 402 F.3d 1350, 1354-56 (Fed. Cir. 2005).

In this case, the administrative judge found that the agency proved only 8 out of the 17 specifications of criminal conduct, and of those 8, it proved 2 of them only in part.  ID at 4-14.  For the specifications that she did not sustain, the administrative judge found that they were supported only by the fact that the appellant was arrested or that charges were filed, and that this alone was not enough to show that the appellant actually engaged in criminal conduct as alleged.  *Id*.

On petition for review, the agency argues that the administrative judge erred in requiring it to submit additional evidence of the appellant's criminal conduct beyond that contained in the results of OPM's background report.  PFR File, Tab 1 at 4-6.  It argues that the results of the report should be sufficient to meet its burden of proof that the matters identified therein actually occurred and that requiring it to produce additional evidence would be burdensome and necessitate a second round of predecisional procedures.  *Id*. at 5-6.

We have considered the agency's arguments, but we find that they do not establish that the administrative judge misapplied the law.  Although we agree that the results of the background report are sufficient to show that the matters identified therein actually occurred, the only thing that this background report shows is a series of arrests and criminal charges.  IAF, Tab 8 at 111-27.  The agency asserts a practice of making suitability determinations based on such information, but it has not cited to any case in which the Board ever sustained a

suitability charge of criminal conduct based on an arrest or charge alone.  It is, however, well-established in chapter 75 case law that the mere fact of an arrest or a criminal charge does not constitute preponderant evidence that the individual actually committed the crime of which he was accused.[2]  *Barber v. Department of the Navy*, 8 M.S.P.R. 229, 230 (1981).  This same preponderant evidence standard applies to suitability appeals.   *Hudlin*, 119 M.S.P.R. 61, ¶ 9;  5 C.F.R. § 1201.56(b)(1)(ii).   The specifications that the administrative judge found proven were based on the appellant's admissions of criminal conduct, which substantiated the allegations underlying the arrests and charges, and we agree with her that these admissions were sufficient to sustain those specifications.  ID at 4-15; *see Pound v. Office of Personnel Management*, 25 M.S.P.R. 134, 136 (1984).   For the reasons explained in the initial decision, we agree with the administrative judge that the agency proved 8 of the 17 specifications at issue either in whole or in part.  ID at 4-15.

Once a suitability charge is proven, the agency is required to show that the conduct at issue bears a nexus to the integrity or the efficiency of the service, i.e., whether the conduct renders the appellant unsuitable for the position in question. *Folio*, 402 F.3d at 1356; 5 C.F.R. § 731.201.  In making this determination, the Board will consider all relevant factors set forth in 5 C.F.R. § 731.202(c).  *Doerr v. Office of Personnel Management*, 104 M.S.P.R. 196, ¶¶ 8, 11 (2006).  Those factors are:  (1) the nature of the position for which the person is applying or in which the person is employed; (2) the nature and seriousness of the conduct; (3) the circumstances surrounding the conduct; (4) the recency of the conduct; (5) the age of the person involved at the time of the conduct; (6) contributing societal conditions; and (7) the absence or presence of rehabilitation or efforts toward rehabilitation.  5 C.F.R. § 731.202(c).

---

[2] In fact, in the absence of an indictment or some other evidence, an arrest or charge is insufficient even to give an agency "reasonable cause" to believe that a crime has been committed.  *Dunnington v. Department of Justice*, 956 F.2d 1151, 1157 (Fed. Cir. 1992).

In this case, the administrative judge considered these factors and found that the agency failed to show that the proven criminal conduct rendered the appellant unsuitable for employment as a Medical Instrument Technician. ID at 15-20. Specifically, she found that the agency failed to show that anything about the position elevated it to a higher level of sensitivity, trust, or responsibility than other Executive Branch positions. ID at 16. She further found that the agency failed to establish that the proven conduct was particularly serious or that the recency of that conduct was of any consequence. ID at 16-19. The administrative judge also found that the appellant's homelessness and mental health challenges likely contributed to his offenses. ID at 19-20. Finally, she found that, although the appellant had earlier made some unsuccessful attempts at rehabilitation, he had recently completed 24 sessions of outpatient treatment and 10 twelve-step meetings with the agency and had become more stable within the previous year. *Id*. On petition for review, the agency argues that the administrative judge misinterpreted some of the evidence on which she based her conclusion and misapplied its framework for assessing the seriousness of a criminal offense. PFR File, Tab 1 at 7-11.

Regarding the nature of the Medical Instrument Technician position, the agency argues that it is "directly related to patient care," and that the appellant's résumé and his response to the affirmative defenses order shows that he was interacting with patients. PFR File, Tab 1 at 7. This argument provides no basis to disturb the initial decision. The agency has not identified any evidence in the record that would show what the duties of a Medical Instrument Technician actually are, and agency counsel's unsupported assertion that the position is "directly related to patient care" does not constitute evidence of the same. A statement of a party's representative in a pleading is not evidence. *Hendricks v. Department of the Navy*, 69 M.S.P.R. 163, 168 (1995). Moreover as the administrative judge correctly noted, performing duties directly related to patient

care is not the same as performing direct patient care. ID at 16. As for the appellant's résumé and response to the affirmative defenses order, all these documents show is that the appellant previously provided direct patient care in other jobs. IAF, Tab 5 at 1-2, 20-21. This evidence bears no relevancy whatsoever to the nature of the position at issue.[3] We further note that the Medical Instrument Technician position requires a Tier 1 background investigation. IAF, Tab 8 at 36. Tier 1 investigations are for positions designated by the agency as "Low Risk," i.e., "involv[ing] duties or responsibilities with the potential for limited impact on the integrity or efficiency of the service." *Id*. at 155-58, 163. Nor has the agency shown that the proven criminal conduct bears any special relationship to the duties of the position. *Cf. Leibowitz v. Department of Justice*, 88 M.S.P.R. 635, ¶¶ 13-14 (2001) (affirming a negative suitability determination for an Immigration and Naturalization Service applicant who admitted that he allowed an illegal alien to reside with him), *aff'd*, 41 F. App'x 412 (Fed. Cir. 2002). For these reasons, we agree with the administrative judge that the agency has not established that the nature of the Medical Instrument Technician position weighs in favor of a negative suitability determination. ID at 16.

Regarding the nature, seriousness, and recency of the conduct, both the agency and the administrative judge relied heavily on the Suitability Adjudication Guidelines in OPM's Suitability Processing Handbook. IAF, Tab 8 at 155, 225-36. These guidelines provide a four-tier system for ranking suitability issues according to their seriousness and potential for a negative suitability determination, with "A" issues being the least serious and "D" issues being the most serious. *Id*. at 225. Under the Handbook, an "A" issue is minor and would not, standing alone, constitute a basis for a negative suitability determination; a

---

[3] These documents do seem to show that the appellant once held a similar position at a non-Veterans' Administration hospital, but that his duties there were limited to organizing, sterilizing, and distributing medical equipment to staff. IAF, Tab 5 at 1, 20.

"B" issue is moderate and would probably not, standing alone, constitute a basis for a negative suitability determination; a "C" issue is substantial and would probably, standing alone, constitute a basis for a negative suitability determination; a "D" issue is major and would, standing alone, constitute a basis for a negative suitability determination. *Id*. Depending on the recency of an issue and the number of similar issues within the same timeframe, its level may be upgraded or downgraded. *Id*. at 227-28. The relevant timeframes, as measured backward from the "control date," are 0-36 months, 37-72 months, and 73-108 months.[4] *Id*.

In this case, the agency in its suitability adjudication worksheet found that the appellant had committed one A-level offense, two B-level offenses, and two D-level offenses within the previous 36 months. *Id*. at 100-01. Based on the pattern and recency of conduct, it upgraded the three lesser offenses to D-level, as well. IAF, Tab 8 at 101-01, 227; Hearing Recording (HR), Track 1 at 11:20 (testimony of the Suitability Chief). The agency also found that the appellant committed three B-level, one C-Level, and one D-level offense within the 37-72 month timeframe, but each of these offenses was downgraded one level due to the passage of time. IAF, Tab 8 at 100, 227-28. The agency also found that the appellant committed several offenses beyond the 72-month mark, but due to the passage of time all of these became non-issues. *Id*. at 100-01, 227-28. Excluding the agency's unproven specifications from consideration, the administrative judge applied the same formulae and determined that the agency proved only that the appellant committed two B-level offenses within 36 months of the control date and that these could not be properly upgraded under the Handbook. ID at 18-19. She also found that, after downgrading for the passage of time, the agency proved two A-level and one B-level offenses for the 37-72 month timeframe. ID at 18. There was another offense within this latter

---

[4] The "control date" varies based on the type of case. IAF, Tab 8 at 227. In this case, the agency asserts that the control date was May 1, 2017. PFR File, Tab 1 at 8.

time period (resisting a peace officer and aggravated assault of a police officer or volunteer) that the agency had rated a D, and downgraded to a C.  IAF, Tab 8 at 100.  However, the administrative judge found that this specification was only partly proven and that the agency did not show that the proven portion of the misconduct (resisting a peace officer) warranted such a serious rating.[5]  ID at 11, 18.

On petition for review, the agency argues that the administrative judge erred in her analysis, but this argument is largely premised on the administrative judge's alleged error in not sustaining many of the specifications.  PFR File, Tab 1 at 7-10.  As explained above, the agency failed to show any error in this regard.  *Supra* ¶ 11.  The agency also argues that it is the appellant's responsibility to provide the details of the circumstances surrounding his arrests.  PFR File, Tab 1 at 7-9.  It faults him for failing to present any evidence at the predecisional stage "to possibly mitigate his arrest record."  *Id*. at 8-9.  However, OPM's regulations do not identify an arrest record as a potential basis for a suitability action.  They do identify criminal conduct as a potential basis, 5 C.F.R. § 731.202(b)(2), but, as explained above, an arrest record alone is not enough to substantiate criminal conduct, *supra* ¶ 11.  Furthermore, it is the agency's burden to establish an evidentiary record in support of its action and to make the ultimate showing that the nature of the appellant's misconduct warrants a negative suitability determination.  5 C.F.R. §§ 731.501(b), 1201.56(b)(1)(ii).  It is not the appellant's burden to prove the opposite.  For the reasons explained in the initial

_____

[5] According to the excerpt of the Suitability Processing Handbook that the agency submitted for the record, there is an appendix of information for agencies to use in rating various offenses from A to D.  IAF, Tab 8 at 225.  The agency did not provide this appendix for the record, and it does not otherwise appear that the agency offered any information that might justify a C rating for the sustained portion of this specification.  This is particularly so considering that the agency assigned an A rating to a 2003 offense of "resisting or obstructing an officer."  *Id*. at 101.  We find that the agency has not proven that the sustained portion of the specification at issue should be rated anything more than a B-level offense.

decision, we agree with the administrative judge's analysis of the ratings under the Suitability Processing Handbook, and we find that the agency proved the existence of two A-level and four B-level offenses within the time period for consideration. ID at 17-19. Nevertheless, we do find that, in the aggregate, this record of offenses gives cause for concern. The agency has established that the appellant engaged in criminal destruction of property, driving under the influence on a suspended license, disorderly conduct, public intoxication, assaulting a paramedic, and resisting arrest, all within the previous 6 years. ID at 4-5, 8-11. Based on this evidence, we find that, at least at the time the agency took its suitability action, there was a serious question about the appellant's overall stability and his ability to follow rules and interact with others, including authority figures, in a calm and reasonable manner.[6] *Id*.

Regarding societal conditions that may have contributed to the appellant's criminal conduct, the administrative judge found that the appellant's homelessness appears to have played a role in some of the sustained specifications. ID at 19-20. She reasoned that the appellant's misconduct frequently arose from his refusal to leave the place where he was and that he would not likely have been charged with the sustained offenses if he could drink at home. *Id*. On review, the agency argues that this was a "biased" and unjustifiable assumption by the administrative judge, particularly when not all of the appellant's arrests included alcohol consumption. PFR File, Tab 1 at 8. The administrative judge also found that the appellant's mental health challenges

---

[6] A significant amount of time has elapsed between the July 14, 2017 suitability determination and the issuance of this Final Order, and there is nothing in the record concerning the appellant's conduct during the intervening period. However, we find that evidence of the appellant's conduct after the agency made its suitability determination would be immaterial to the outcome of the appeal.

constituted a substantial mitigating circumstance.[7]  ID at 20.  The agency does not appear to contest this finding.

As an initial matter, we disagree with the agency that the administrative judge's case-related ruling was in any way indicative of bias.  *See Martinez v. Department of the Interior*, 88 M.S.P.R. 169, ¶ 14 (2001).  Furthermore, we find it rather obvious that homelessness is a difficult life circumstance that can lead to run-ins with law enforcement.  We therefore agree with the administrative judge that this situation may, at least in part, account for the extent of the appellant's criminal history.  As for the appellant's alcohol consumption, the agency's argument once again proceeds from the premise that it proved all of its specifications, which it did not.  It appears to us that all or nearly all of the sustained specifications were alcohol-related.  ID at 4, 8-11, 14.  Nevertheless, alcohol abuse may itself provide a basis for a negative suitability determination, 5 C.F.R. § 731.202(b)(5), so we do not consider the appellant's ability to abuse alcohol at home rather than in public to be a substantial mitigating factor.  As for the appellant's mental health condition, we also agree with the administrative judge that this appears to have played a role in much of his criminal conduct and that it is appropriate to consider it as part of the nexus analysis to the extent that he has experienced rehabilitation.  *Cf. Mingledough v. Department of Veterans Affairs*, 88 M.S.P.R. 452, 458, ¶ 12 (2001) ("[T]he Board has not considered a medical or mental impairment to be a significant mitigating factor in the absence of evidence that the impairment can be remedied or controlled, i.e., when the potential for rehabilitation is poor.").

Regarding the appellant's rehabilitative efforts, the administrative judge acknowledged that he had undergone previous unsuccessful attempts at rehabilitation, including dozens of sessions with the agency's Outpatient Addiction Treatment Program (ATP) Trauma Track on and off since 2008.  ID

---

[7] The appellant has been diagnosed with posttraumatic stress disorder, depression, and alcohol dependency.  HR, Track 3 at 30:20 (testimony of the appellant's psychiatrist).

at 19. She nevertheless found that the appellant had recently completed significant rehabilitation efforts in the form of 36 additional ATP sessions, and noted that the appellant's treating psychiatrist testified that the appellant has been doing much better since then. ID at 19. On petition for review, the agency argues that the appellant's history of unsuccessful attempts at rehabilitation casts serious doubt on the efficacy of his most recent attempts. PFR File, Tab 1 at 11. It further argues that the appellant's psychiatrist did not know about the extent of the appellant's criminal history, had only met with him sporadically during the past 2 years, and formed his opinion of the appellant's stability based on the appellant's self-reports rather than on a full examination. *Id*. at 10.

As an initial matter, we do not think that the testimony of the appellant's treating psychiatrist can be entirely discounted. He testified candidly concerning his history with the appellant, including that he had met with the appellant approximately eight times from 2015 through 2017, and that he was aware of at least some of the appellant's criminal history through the appellant's self-reports. HR, Track 3 at 52:30, 58:05 (testimony of the appellant's psychiatrist). Even in the absence of a comprehensive mental health evaluation, we have little reason to doubt his opinion, formed by observing the appellant in a clinical setting, that the appellant had, in fact, become more mentally stable over the past year. HR, Track 3 at 35:00, 49:45 (testimony of the appellant's psychiatrist). Nevertheless, we agree with the agency that, in light of the appellant's extensive and unsuccessful prior attempts at rehabilitation through the ATP, there remained a serious question as to the permanency of any gains that he may have made more recently. PFR File, Tab 1 at 11; IAF, Tab 8 at 64. OPM's suitability regulations are grounded in the principle that there is always hope for rehabilitation. *See* 5 C.F.R. §§ 731.204-.205 (prohibiting debarments for more than 3 years before an applicant's suitability must be reassessed). The record shows that the appellant is working earnestly toward rehabilitation and that he has made some recent gains

that appear to be promising. However, based on the duration and extent of the appellant's criminal history and his inability to overcome his difficulties in the past, the record does not support a finding that the appellant's criminal history was behind him at the time the agency took its suitability action. Therefore, we cannot agree that the agency has failed to establish a nexus between this conduct and the integrity or the efficiency of the service.

Because the agency has proven its charge of criminal conduct and established nexus, we affirm the suitability action. *See Campbell v. Office of Personnel Management*, 24 M.S.P.R. 520, 523 (1984). We note, however, that the agency's decision letter indicates that the only suitability action it took was to cancel the appellant's pending eligibilities. IAF, Tab 8 at 28. There is no mention of any period of debarment. Our decision in this appeal does not preclude the appellant from reapplying for Federal employment and having a new suitability determination made based on his current rehabilitation status. *Stewart v. Office of Personnel Management*, 8 M.S.P.R. 289, 298 (1981).

The appellant did not prove his affirmative defense of disability discrimination.

The administrative judge analyzed the appellant's disability discrimination defense under both disparate treatment and reasonable accommodation theories. ID at 21-25. She found that the appellant failed to prove his claim under a reasonable accommodation theory because he did not request a reasonable accommodation in the suitability process and he did not identify an accommodation that could accommodate his disabling conditions. ID at 22. She also found that the appellant failed to prove his claim under a disparate treatment theory because the agency provided a legitimate, nondiscriminatory reason for its suitability action, and the appellant failed to provide evidence of discriminatory animus sufficient to rebut the agency's explanation for the action. ID at 24-25. On cross petition for review, the appellant disputes these findings. PFR File, Tab 8 at 6-14. After the administrative judge issued the initial decision, the

Board clarified the legal standard for proving disability discrimination. We apply that standard now.

The Board adjudicates claims of disability discrimination raised in connection with an otherwise appealable action under the substantive standards of section 501 of the Rehabilitation Act. *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 28; *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 35. The Rehabilitation Act has incorporated the standards of the Americans with Disabilities Act (ADA), as amended by the Americans with Disabilities Act Amendments Act of 2008. *Haas*, 2022 MSPB 36, ¶ 28; *Pridgen*, 2022 MSPB 31, ¶ 35. Therefore, we apply those standards here to determine if there has been a Rehabilitation Act violation. In particular, the ADA provides that it is illegal for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a); *Haas*, 2022 MSPB 36, ¶ 28. A qualified individual with a disability is one who can "perform the essential functions of the . . . position that such individual holds or desires" with or without reasonable accommodation. 42 U.S.C. § 12111(8); *Haas*, 2022 MSPB 36, ¶ 28. An employer is also required to provide reasonable accommodations to an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5); *Haas*, 2022 MSPB 36, ¶ 28. Thus, both a claim of disability discrimination based on an individual's status as disabled and a claim based on an agency's failure to reasonably accommodate that disability require that the individual be "qualified." *Haas*, 2022 MSPB 36, ¶ 28.

We find that the appellant in this case is not a qualified disabled individual because, during the relevant time period, he could not satisfy the requisite skill, experience, education, and other job-related requirements of the Medical Instrument Technician position and because he does not satisfy the job-related requirement of a favorable suitability determination.[8] *See* 5 C.F.R. § 731.104(a),

---

[8] Even assuming that the appellant's criminal conduct was a direct manifestation of his disability, nothing in the Rehabilitation Act requires the agency to exempt him from

29 C.F.R. § 1630.2(m). Nor has the appellant identified a reasonable accommodation that would enable him to satisfy this job-related requirement. Because he is not a "qualified disabled individual," he cannot prevail on his disability discrimination claim under either a disparate treatment theory or a reasonable accommodation theory. *Haas*, 2022 MSPB 36, ¶ 28.

## NOTICE OF APPEAL RIGHTS[9]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S.

---

standard suitability requirements or to excuse misconduct that it would not excuse from non-disabled applicants. *See Fitzgerald v. Department of Defense*, 85 M.S.P.R. 463, ¶ 4 (2000); *Laniewicz v. Department of Veterans Affairs*, 83 M.S.P.R. 477, ¶ 5 (1999).

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case,

and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

---

[10] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

_Jennifer Everling_

_____
Jennifer Everling
Acting Clerk of the Board

Washington, D.C.